# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RODNEY E. JONES | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-13-3602 |
| WARDEN | * | |
| Defendant | * | |

## MEMORANDUM

On December 5, 2013, the court issued an emergency order requiring counsel for the Maryland Division of Correction to show cause why plaintiff's request for injunctive relief should not be granted. ECF 3. The Maryland Division of Corrections responded, through counsel, and submitted numerous exhibits. ECF 7. Thereafter, plaintiff filed correspondence in reply to the response.[1] ECF 10.

Moreover, plaintiff has amended the complaint, as required by this Court's Order of December 5, 2013 (ECF 2), naming as defendants Warden Richard Graham, Jr., Michael Thomas, Captain Butler, Correctional Officer Shawn Cook, Correctional Officer Jason Lee, Lt. Gordon, Lt. Michael Malloy, and Sergeant Lisa Lasher.[2] ECF 10 at p. 1 (caption). However,

---

[1] Counsel for the Division of Correction also filed a response to an order to show cause in an earlier filed civil action concerning plaintiff's claims that his life was endangered at Maryland Reception Diagnostic Classification Center ("MRDCC"). *See Jones v. Lt. Ruffin*, Civil Action No. ELH-13-3198 at ECF 3. Correspondence filed in Civil Action ELH-13-3198 has been docketed in this case and will be considered as part of plaintiff's opposition. *Id.* at ECF 6.

[2] As set forth in the accompanying Order, the docket shall be amended and the Clerk shall take steps to serve the complaint as amended. To the extent plaintiff intends to name as defendants other prison officials mentioned in his correspondence, his intention to do so is not clearly stated.

Service of the complaint has not yet been accepted.[3]

## Factual Summary

Plaintiff claims he has been threatened by staff and inmates at Western Correctional Institution ("WCI") because he has been openly identified as an informant or a "snitch." He claims he has witnessed officers passing contraband to inmates who are known gang members and that he was threatened when it became known he was a witness. Further, Jones claims his cellmate has assaulted him and his reports of the assaults have been ignored. He states that numerous members of the prison staff have harassed and assaulted him in retaliation for his reports on gang activity and that he has been poisoned by an inmate who delivered his food to his cell. *See* ECF 1, 5, 10 and 11.

Division of Correction records establish that plaintiff arrived at WCI on November 7, 2013, and was placed on administrative segregation status pending an investigation to determine where he could be most appropriately housed. ECF 7 at Ex. 1. During that investigation it was verified that plaintiff had been transferred from North Carolina to Maryland under the Interstate Corrections Compact ("ICC") after he witnessed a murder of another inmate. *Id.* No information was provided indicating that plaintiff required special housing as a result and there was no indication that he had any enemies or that he was a member of a security threat group ("STG"). *Id.* Based on those considerations, plaintiff was assigned to general population on November 13, 2013. *Id.* On November 18, 2013, plaintiff was interviewed by Case Management Specialist David Bittinger in "the presence of other staff members and he supplied no names of persons whom he considered to be his enemies." *Id.* at p. 2.

---

[3] This court's show cause Order expressly stated that counsel's response would not constitute acceptance of service of process on behalf of any defendant, nor waiver of any arguable defenses. ECF 3.

On November 22, 2013, plaintiff was charged with a disciplinary violation (Rule 104, use of threatening language) and moved to administrative segregation pending a hearing. ECF 7 at Ex. 1, p. 2. Plaintiff shares this cell with inmate Donnell Mackey. There have been no reported incidents or complaints by plaintiff regarding Mackey, according to defendants. *Id.* Because plaintiff is a "special confinement inmate" he is escorted by a correctional officer any time he leaves his cell. And, only inmates approved to be housed together share a cell in that unit. When plaintiff spends time in the dayroom, he is accompanied only by the inmate with whom he shares a cell. All meals are delivered to plaintiff's cell in the presence of a correctional officer. *Id.*

The correctional officers named in the amended complaint have submitted declarations under oath, denying the allegations against them. Correctional Officer Shawn Cook, who plaintiff claims threatened him because he witnessed Cook delivering drugs to a known gang member inside the prison, denies unprofessional behavior and denies introducing contraband into the prison. Cook claims plaintiff's allegations against him are completely fabricated. *Id.* at Ex. 5. Officer Jason Lee, who allegedly assaulted plaintiff and made derogatory statements regarding plaintiff's sexual orientation, states he has never behaved unprofessionally, sexually harassed plaintiff, nor witnessed others doing so. *Id.* at Ex. 6. Sergeant Lisa Lasher admits plaintiff turned a weapon in that he claimed was hidden in a common area of housing unit #3, but denies ever prompting that action with a promise of a more favorable housing assignment or other compensation. *Id.* at Ex. 7. Additionally, Lasher states she only informed the officials she was required to tell within the chain of command about the weapon plaintiff turned in, and never told other inmates about plaintiff's actions. *Id.* Lasher also offers, without explanation, that plaintiff's motive in providing the information was to obtain a housing assignment change. *Id.*

Lt. Michael Malloy states he has investigated plaintiff's claims that he is being threatened

3

by gang members and can find no evidence to support the allegation. *Id.* at Ex. 8. Notwithstanding the lack of evidence, an investigation by the Internal Investigation Unit ("IIU") was initiated by Captain Bradley Butler after he received a letter from plaintiff alleging multiple incidents of staff misconduct. *Id.* at Ex. 9. The investigation is ongoing; currently, there is no information to support plaintiff's claim that he is being threatened by a gang. *Id.*

In his reply, Jones asserts that on December 21, 2013, he was told by an unknown white male correctional officer that his complaints against Cook, Lee, and Lasher are inconsequential and that white people run the prison.[4] ECF 10. Further, he claims the officer told him that WCI stood for "We Control Inmates" and that the officer called him a snitch. *Id.* Plaintiff asserts that on the following day Correctional Officer Frederick came to his cell and in a loud voice called him a snitch and a homosexual. Following this encounter, plaintiff claims to have received a threatening note which he states he forwarded to the undersigned for review.[5] Plaintiff does not state whether the threatening note was turned over to correctional staff.

Plaintiff also alleges that Lee's declaration is not truthful and that Lee in fact made statements about plaintiff's anus and penis and also later called plaintiff a snitch. *Id.* at p. 2. Plaintiff also claims Cook's declaration is "bogus" and maintains he personally witnessed Cook pass drugs to "Freshy," a member of the DMI[6] gang. *Id.* He further claims that Cook and Officer Hinton handcuffed him, took him to an area where there were no video cameras, and threatened that plaintiff would be killed if he said anything. *Id.*

---

[4] Plaintiff's account includes expletives and racial slurs. ECF 10 at p. 1.

[5] On December 13, 2013, plaintiff filed a note of a threatening nature he claimed he received from another inmate. ECF 5 at Att. 1. No threatening note was included as an exhibit with his reply. ECF 10.

[6] Dead Men Incorporated or "DMI" is a known Security Threat Group prevalent in Maryland Division of Correction facilities frequently referenced in prisoner litigation filed in this court.

4

According to plaintiff, Lt. Malloy never spoke to him regarding any complaints he wrote and no investigation took place. *Id.* Further, he maintains that Lasher coerced him into providing her with a weapon from housing unit #3 from a stash belonging to the Bloods gang by promising him she would move him to housing unit #1 and obtain a transfer for him to Hagerstown. *Id.* at p. 3. Plaintiff asserts that, after he delivered the weapon to Lasher, Lt. Gordon and inmates belonging to STGs knew plaintiff had turned the weapon over to Lasher. *Id.*

Plaintiff states that his life is threatened by the following staff members: Warden Richard Graham, Jr., Michael Thomas, Captain Butler, Lt. Gordon, Lt. Malloy, Sgt. Lasher, Sgt. Payton, D. Bittinger, Officer Cook, Officer Lee, Officer Harper, Officer Dorsey, Officer Allison, Officer Wilson, Officer Hinton, Officer Adamson, Officer Davis, Lt. Gordon, and Officer Frederick. *Id.* at p. 3. He also claims he is threatened by the following STGs: Bloods, Black Guerilla Family, Crips, and DMI. *Id.* He further claims that the inmate with whom he shares a cell is a member of the Bloods, that he has written 22 requests to be moved, and all requests have been ignored. *Id.* Plaintiff alleges the attorney general's response to this court's order to show cause was deliberately designed to "protect the clan of Aryan Nation Brotherhood," implies all defendants named are members of that group, and claims WCI is controlled by the Aryan Nation. *Id.* at p. 4. Plaintiff concludes that in order to be protected from an imminent threat of harm he must be transferred from WCI, but that he cannot be safely housed at Eastern Correctional Institution or North Branch Correctional Institution. *Id.*

Recent correspondence from plaintiff reiterates his belief that his life is in imminent danger. He asserts claims that his cellmate has "jumped" him twice. ECF 11. Plaintiff also claims he has been poisoned by one of the inmates who delivered his meal to his cell. He claims since he ate one particular meal he has been vomiting blood and cannot keep any other food

5

down. He states he has put in multiple written requests for medical care which have been ignored. In addition, he states he has submitted written requests to be moved to a single cell away from his current cellmate to prison officials, but those requests were ignored. *Id.*

## Standard of Review

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

## Discussion

There is no indication in defendants' response that the threatening note submitted by plaintiff to this court[7] is known to investigators looking into his claims against staff and other inmates. Defendants indicate, however, that the investigation is currently ongoing. Upon its completion there may be evidence that plaintiff has in fact been threatened, assaulted, or is otherwise in imminent danger of harm. To the extent defendants assert plaintiff is simply attempting to manipulate a transfer to another facility of his choosing, that allegation is somewhat supported by plaintiff's assertion, without explanation, that there are certain prisons where he may not be transferred. Plaintiff's allegation that WCI is controlled by a white supremacy gang is without any evidentiary support, as he offers no objective evidence or

---

[7] *See* ECF 5 at Attachment 1.

6

observations to support such a claim.

Nevertheless, the undeveloped record, together with plaintiff's new allegations that he has been assaulted by his cellmate and denied medical care for what appear to be serious symptoms, weigh against denial of all injunctive relief. Accordingly, plaintiff will be granted partial injunctive relief pending completion of the investigation. Upon its completion, counsel is directed to file a supplementary response indicating the results of the investigation, including a copy of the full investigative report. In addition, counsel shall address plaintiff's allegations of assault by his cell mate, receipt of threatening notes from gang members, poisoning through prison food, and plaintiff's claim that he has been denied medical care. While the investigation is ongoing and the matter is pending before the court, plaintiff will be assigned to a cell where he is housed alone. In the event his housing assignment or institutional assignment changes, counsel shall inform the court of those changes, together with the rationale for the change.

A separate Order follows.

January 10, 2014　　　　　　　　　　　　/s/
Date　　　　　　　　　　　　　　　　　Ellen Lipton Hollander
　　　　　　　　　　　　　　　　　　　United States District Judge